IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| GARY ORAM, JR., | Cause No. CV 11-00026-BU-RFC-CSO |
| Plaintiff, | |
| vs. | **ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| JAMES DOLAN, KEN PETERSON, and DON GUIBERSON, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Gary Oram (Oram) contends Defendants violated his state and federal rights by falsely imprisoning and maliciously prosecuting him after a bar fight on May 31, 2011.

The following motions are pending:

(1) Defendants' Motion for Summary Judgment (*Court Doc. 37*) and,

(2) Oram's Rule 60 Motion to Vacate the Order denying his Motions to Compel. *Court Doc. 42*.

Having considered the parties' arguments and submissions, the Court will deny Oram's Motion to Vacate, which has been construed as

1

a motion for reconsideration. The Court will recommend that Defendants' Motion for Summary Judgment be granted and this matter be dismissed with prejudice.[1]

## II. **BACKGROUND**

Prior to February 9, 2011, Oram was convicted of two offenses, disorderly conduct in violation of Mont. Code Ann. § 45-8-101(2) and assault in violation of Mont. Code Ann. § 45-5-201. *Court Doc. 38-1 at 2.* On that date, the Dillon City Court issued two Sentencing Orders. These sentences each placed Oram on unsupervised probation for a period of six months subject to a number of conditions. Both Sentencing Orders provided that Oram have no contact with any victim or witness in the case. *Court Doc. 38: Defendants' Statement of Uncontroverted Facts ("SUF"), ¶¶ 1, 2 citing Court Doc. 38-1: Dolan Affidavit, ¶¶ 5, 6.*

Jocelyn Curtis and Nicole Hughes were witnesses in both cases, and Nicole Hughes was the victim in the assault case. *Court Doc. 38: Defendants' SUF, ¶ 3 citing Court Doc. 38-1: Dolan Affidavit ¶ 4.*

---

[1]By order dated February 17, 2012, Chief Judge Cebull referred this case to the undersigned for pretrial purposes pursuant to 28 U.S.C. § 636(b)(1), including submission of proposed findings and recommendations. *Court Doc. 30.*

Less than four months later, on May 31, 2011, Oram entered the Moose Bar and ordered some drinks for him and his companion. *Court Doc. 14, p. 3, ¶ 10.*[2] Minutes after entering the bar he alleges he was confronted by Shawn Hughes. *Court Doc. 14, p. 3, ¶¶ 13-17.* He contends he asked the bartender, Jocelyn Curtis, to call the police and she refused to do so. *Court Doc. 14, pp. 4-5, ¶¶ 20-23.* He alleges that Shawn Hughes threw him against a wall and hit him with his fists, knees, and a bar chair, and also that Hughes kicked him in the face and chest with his cowboy boots. *Court Doc. 14, pp. 5-6, ¶¶ 27-28.*

At some point Oram was able to crawl out of the bar and begin to defend himself. Outside the bar he alleges Shawn Hughes got on top of him and pounded his head on the cement sidewalk. Oram was able to get out from underneath Hughes and struck Hughes with "an incapacitating blow with the front of his quadriceps." *Court Doc. 14, p. 6, ¶ 29.* Oram was then "attacked by at least three other men." *Id.* Oram contends these men held Oram on the ground while an

---

[2]The First Amended Complaint (*Court Doc. 14*) supercedes Mr. Oram's original complaint (*Court Doc. 1*). *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (2010).

unidentified man kept kicking him in the stomach. Oram was eventually able to crawl out of the crowd and wobbled in a "semi-conscious state" into the street when the police arrived. *Court Doc. 14, p. 6, ¶ 29.*

The Dillon Police Department received a report of a fight in progress at the Moose Bar at around 10:00 p.m. *Court Doc. 38: Defendants' SUF, ¶ 4 citing Court Doc. 38-2: Guiberson Affidavit ¶ 3.* Officers Ken Peterson and Don Guiberson immediately responded. When they arrived at the scene, Officer Guiberson states that he saw Oram walking away from the bar, kneel on the ground near the patrol car and put his hands behind his head. His pants were saturated in what appeared to be blood. *Court Doc. 38: Defendants' SUF, ¶ 4 citing Court Doc. 38-2: Guiberson Affidavit ¶ 4.* Oram contends he fell to the ground because he was unable to stand and groped the back of his head with his hands attempting to soothe the pain in the back of his head. *Court Doc. 45: Oram's Statement of Genuine Issues ("SGI"), p. 2, ¶ 4.*

Officer Guiberson also saw Shawn Hughes on the ground. He was bleeding profusely from the eye area. There were large amounts of

blood on the ground. *Court Doc. 38: Defendants' SUF, ¶ 5 citing Court Doc. 38-2: Guiberson Affidavit ¶ 5.*

Officer Guiberson saw several people yelling and pointing at Oram in a very aggressive manner. One witness, Michael Ogburn was seen kneeling near Shawn Hughes and yelling at Oram, using words to the effect "You like kicking people while they are down." *Court Doc. 38: Defendants' SUF, ¶ 6 citing Court Doc. 38-2: Guiberson Affidavit ¶ 6.* Oram points out that Guiberson's police report indicates Ogburn told Guiberson that he observed Oram continually kneeing Hughs in the face while he was on the ground. *Court Doc. 45: Oram's SGI, p. 4, ¶ 6 citing Court Doc. 45-2, p. 2--Guiberson's Report.* Oram contends several witnesses who spoke with the Officers did not see what occurred in the bar so could not know how the fight began. *Court Doc. 45: Oram's SGI, p. 5, ¶ 6.*

Officer Guiberson knew Oram was a registered violent offender. *Court Doc. 38: Defendants' SUF, ¶ 7 citing Court Doc. 38-2: Guiberson Affidavit ¶ 7.* Based on what Officer Guiberson saw and heard, and his knowledge of Oram as a violent offender, he placed Oram in handcuffs.

*Id.* Oram alleges Officer Peterson took his left hand, whipped it around behind him, and locked it into a restraint. Officer Guiberson then grabbed and twisted Oram's right hand and locked the restraints into place. *Court Doc. 14, p. 7, ¶ 31.* Officer Guiberson put Oram in the back of the squad car. *Court Doc. 14, p. 7, ¶ 32.*

Officer Guiberson then began to interview people in the area. He spoke with Nicole Hughes who advised him that Oram had struck her approximately one year before while at the Moose Bar. She indicated that charges were filed against Oram and a jury found him guilty of disorderly conduct and assault. She said the Court had ordered Oram to stay away from her. *Court Doc. 38: Defendants' SUF, ¶ 8 citing Court Doc. 38-2: Guiberson Affidavit ¶ 8.* Oram points out that Guiberson's police report indicated Hughes told him that the Judge had ordered Oram "to stay at least 100 feet away from her." *Court Doc. 45: Oram's SGI, p. 6, ¶ 8 citing Court Doc. 45-2: Guiberson Affidavit, p. 2.*

Officer Guiberson also spoke with Jocelyn Curtis, the bartender at the Moose Bar. She told Guiberson that she had asked Oram to leave because Nicole Hughes was in the bar and she was aware of the issues

between Nicole Hughes and Oram. She told Guiberson that Oram refused to leave, that Shawn Hughes had words with Oram, and the two began to fight. *Court Doc. 38: Defendants' SUF, ¶ 9 citing Court Doc. 38-2: Guiberson Affidavit ¶ 9.*

After what Oram contends was a "lengthy time of investigative procedures," the Officers returned to the car. *Court Doc. 14, p. 7, ¶ 34.* Officer Peterson drove the vehicle away from the crowd and stopped. *Court Doc. 14, p. 8, ¶ 36.* The Officers told Oram "there was no reason for them not to take him to jail." *Court Doc. 14, p. 8, ¶ 37.* But after several hours, the officers returned Oram to his residence and presented him with a citation for disorderly conduct.[3] *Court Doc. 38: Defendants' SUF, ¶ 10 citing Court Doc. 38-2: Guiberson Affidavit ¶ 10.* Oram alleges it was several hours after the assault that the officers returned Oram to his home and cited him for disturbing the peace. *Court Doc. 14, p. 8, ¶ 39.* Oram contends that after Officer Guiberson took off the restraints, he pushed Oram several times. *Court Doc. 14, p. 9, ¶ 40.* Oram went to the hospital the next day for treatment. *Court*

---

[3]For reasons unknown to the Court, a trial on this disorderly conduct citation has not been held. *See Court Doc. 38-2 at 3, ¶ 10.*

*Doc. 14, p. 9, ¶ 43.*

After returning Oram to his residence, Officer Guiberson went to the emergency room of the local hospital and there issued a citation to Shawn Hughes for disorderly conduct. Shawn Hughes has plead guilty to that citation. *Court Doc. 38: Defendants' SUF, ¶ 11 citing Court Doc. 38-2: Guiberson Affidavit ¶ 11.*

On June 8, 2011, Deputy City Attorney James P. Dolan, filed a Motion for Order to Show Cause and to Revoke Oram's Suspended Sentence. In that Motion, he asked the City Court to direct Oram to appear and show cause why his suspended sentences, dated February 9, 2011, should not be revoked. He also asked for the issuance of an arrest warrant. *Court Doc. 38: Defendants' SUF, ¶ 12 citing Court Doc. 38-1: Dolan Affidavit, ¶ 7.* The Dillon City Court issued an arrest warrant on June 8, 2011. *Id. at ¶ 8.* As of the time of Dolan's affidavit (March 23, 2012), the Motion for Order to Show Cause and to Revoke Suspended Sentence was still pending in the Dillon City Court. *Court Doc. 38: Defendants' SUF, ¶ 13 citing Court Doc. 38-1: Dolan Affidavit, ¶ 9.*

Oram states that the warrant was executed by Dillon police

officers on June 10, 2011. *Court Doc. 14 at 10-11.* He was transported to the Beaverhead Detention Facility, booked "through the usual procedures," and bonded out. *Court Doc. 14, p. 11, ¶ 51.*

In his Statement of Genuine Issues, Oram states he "appeared as requested" on June 27, 2011. He also indicates he plead "not guilty" at his initial appearance. *Court Doc. 45: Oram's SGI, p. 10, ¶ 13.* It is not clear whether Oram is referring to an appearance on the disorderly conduct charge or the probation violation charge.

## III. <u>DISCUSSION</u>

### A. <u>Oram's Rule 60 Motion to Vacate</u>

Oram's Rule 60 Motion to Vacate and Refile Pursuant to Local Rule 7.1(4) (*Court Doc. 42*) is construed as a motion for leave to file a motion for reconsideration pursuant to Local Rule 7.3 and as such will be denied for several reasons.

First, pursuant to Local Rule 7.3(b), a motion for leave to file a motion for reconsideration must meet at least one of the following two criteria:

> (1)  (A) the facts or applicable law are materially different from the facts or applicable law that the parties

presented to the Court before entry of the order for which reconsideration is sought, and
(B) despite the exercise of reasonable diligence, the party applying for reconsideration did not know such fact or law before entry of the order; or

(2) new material facts emerged or a change of law occurred after entry of the order.

Oram's motion does not meet either criteria.

Secondly, Oram's argument that the filing of discovery constitutes an attempt to confer is frivolous. Such an argument would make L.R. 37 and Fed.R.Civ.P. 37 superfluous. These requirements to confer about discovery issues would be unnecessary if the filing of the discovery alone were sufficient to constitute conferral.

The rules regarding the filing of discovery motions are more rigorous than those governing the filing of other motions. Rule 7.1 merely requires an indication in the motion whether the opposing party objects to the motion. Discovery motions require actual conferral between the parties. Defense counsel's affidavit indicates that this process of conferring to resolve discovery difficulties is ongoing. *Court Doc. 46 at 2.* It is not clear that Court intervention will be required.

Local Rule 26.3(c) forewarns the parties:

The Court will deny any discovery motion unless counsel have conferred concerning all disputed issues before the motion is filed. The mere sending of a written, electronic, or voice-mail communication does not satisfy this requirement. Rather, this requirement can be satisfied only through direct dialogue and discussion in a face to face meeting, in a telephone conversation, or in detailed, comprehensive correspondence.

The Court cannot expend scarce judicial resources reviewing discovery motions which could be avoided, in whole or in part, through good faith meet-and-confer efforts.

The Local Rules of this Court clearly state: "A self-represented person is bound by the Federal Rules and all applicable local rules. Sanctions, including but not limited to entry of default judgment or dismissal with prejudice, may be imposed for failure to comply with local rules." *L.R. 83.8(a)*. Oram's pro se status does not excuse him from having to comply with the rules. *Carter v. Commissioner of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986)(pro se status does not discharge a litigant's obligation to "abide by the rules of the court in which [they] litigate[ ]."). This Court is mindful, however, of the need to interpret *pro se* pleadings liberally, *Erickson v. Pardus*, 551, U.S. 89 (2007), and has done so. *See also* Fed.R.Civ.P. 8(f) ("All pleadings shall

be so construed as to do substantial justice").

Lastly, as set forth below, the Court recommends this matter be dismissed. There is no showing that any information Oram seeks to compel would aid his arguments.

For these reasons, the Motion to Vacate, treated as a motion to reconsider, will be denied.

## B. Defendants' Motion for Summary Judgment[4]

### 1. Summary Judgment Standards

A party is entitled to summary judgment if it can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] That is, where the documentary evidence permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

---

[4]Although there is a difference of opinion whether Defendants' counsel consulted with Oram prior to filing the Motion for Summary Judgment, defense counsel has filed an affidavit indicating that he did visit with Oram prior to filing the motion and that Oram indicated that he did object. *Court. Doc. 46 at 2, ¶ 6.*

[5]Rule 56 was amended in 2010. It is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

Rule 56 of the Federal Rules of Civil Procedure provides,

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by:  (A) citing to
> particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made
> for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or (B) showing that the
> materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Thus, the party seeking summary judgment bears the initial

burden of informing the Court of the basis of the motion and identifying

those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which

demonstrate the absence of any genuine issue of material fact.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a defendant files a properly supported motion for summary

judgment, a plaintiff may not rest on its allegations alone without "any

significant probative evidence tending to support the complaint."

*Anderson*, 477 U.S. at 249 quoting *First National Bank of Arizona v.

Cities Service Co.*, 391 U.S. 253 (1968).  "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted).

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Anderson*, 477 U.S. at 252. "[I]f the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)(emphasis in original). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Anderson*, 477 U.S. at 248. At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 127 (9th Cir. 1988).

## 2. <u>The Parties' Arguments</u>

In his Amended Complaint, Oram presented 54 paragraphs of facts regarding the incidents at issue. He then plead four specific counts of liability. These four specific theories of liability are the claims addressed by parties in their briefing on the Motion for Summary Judgment and thus are the claims addressed by this Court herein.

In Count One, Oram contends that because he had no contributory fault in the circumstances he should be insulated from prosecution. He contends the police reports fail to mention anything Oram told them about the occurrence. Liberally construing the Amended Complaint, the Court concludes that Count One alleges a malicious prosecution

claim, in that he contends that he "should be insulated from prosecution." *Court Doc. 14, pp. 11-12, ¶ 55.*

Count Two alleges false imprisonment. Oram contends that after the Officers discovered he was not at fault and that they were not going to take him to jail, there was no reason to detain him any longer. He contends that every second he remained handcuffed in the patrol car after the vehicle left the scene, he suffered an unjust infringement on his Fourth Amendment rights. *Court Doc. 14, pp. 12-13, ¶¶ 56-57.* Count Two also alleges an excessive force claim against Officer Guiberson, contending that Guiberson used unreasonable force when he pushed Oram after taking him home and removing the handcuffs. *Court Doc. 14, p. 14, ¶ 60.*

Count Three alleges Defendant Dolan exceeded his authority in seeking a warrant for Oram's arrest for violation of the prior criminal judgment. Oram also contends that a full, fair, and impartial hearing was never held "before his rights were seized on June 10, 2011." *Court Doc. 14, p. 15, ¶ 62.*

Court Four simply quotes Section 3 of the Fourteenth Amendment

to the United States Constitution. The Court is unable to construe any claim raised in Count Four. *Court Doc. 14, pp. 15-16, ¶ 63.*

In his prayer for relief, Oram seeks a jury trial, asks that James Dolan be dismissed from his office, that Officer Peterson pay him "punitive restitution" in the amount of $1,000,000, and that Officer Guiberson pay him "punitive restitution" in the amount of $10,000,000. *Court Doc. 14, p. 17, ¶¶ 71-73.*

Defendants argue there was probable cause to both arrest and prosecute Oram for disorderly conduct and therefore they are not liable for false imprisonment or malicious prosecution and they are entitled to qualified immunity. Defendant Guiberson contends he did not use excessive force against Oram. Defendant Dolan contends he is entitled absolute prosecutorial immunity.

### 3. **Qualified Immunity Analysis**

Defendants argue that they are entitled to summary judgment based upon qualified immunity. Although this case is still in the discovery stage, the defense of qualified immunity is not only a defense to liability, but also an immunity from suit, and from all the risks,

distractions and "inhibition[s] of discretionary action, and deterrence of able people from public service," that go along with being a defendant in a civil lawsuit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 816 (1982)). In *Hunter v. Bryant,* 502 U.S. 224, 228 (1991), the Supreme Court held that qualified "[i]mmunity ordinarily should be decided by the court long before trial." Therefore, it is appropriate to address the qualified immunity arguments at this stage of the litigation.

Qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011) (*quoting Harlow v. Fitzgerald*, 457 U.S. at 818). In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court mandated a two-step process for resolving qualified immunity claims. Courts were required to first to determine whether the defendant violated a constitutional right and then to determine whether that right was clearly established. *Saucier*, 533 U.S. at 201.

In *Pearson v. Callahan*, 555 U.S. 223 (2009), however, the Supreme held that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 555 U.S. at 236. Therefore, this Court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 131 S.Ct. at 2080.

As set forth below, the evidence fails to show a violation of Oram's constitutional rights. Defendants prevail on the first prong of the *Saucier* test and there is no need to address the question of whether the rights at issue were clearly established. As a matter of law, Defendants are entitled to qualified immunity.

### a.    Counts One and Two

### i.    False Imprisonment

Constitutional claims for false arrest, detention, and malicious prosecution under § 1983 are analyzed in light of analogous torts, such as false arrest and malicious prosecution. The constitutional right at issue is the Fourth Amendment right to be free from unreasonable seizures. Accordingly, the focal point of the Court's analysis is whether

there was probable cause supporting Oram's arrest, detention, and prosecution.

"Probable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment, as the lack of probable cause is a necessary element of each." *Lacy v. Cnty. of Maricopa*, 631 F.Supp.2d 1183, 1193 (D.Ariz. 2008) (*citing Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). *See also Smith v. Almada*, 640 F.3d 931, 944 (9th Cir. 2011) (Gwin, J., concurring) (explaining probable cause acts as an absolute defense to both false arrest and malicious prosecution claims). In *Robenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011), the Ninth Circuit held: "In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest . . . " *Id. at* 1076.

Similar principles apply to state law claims for false imprisonment. In Montana, a police officer may arrest a person without a warrant if the officer has probable cause to believe that person is

committing an offense or has committed an offense and the circumstances require an immediate arrest. Mont. Code Ann. § 46-6-311.

"The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (citation omitted) (internal quotation marks omitted). Under Montana law, probable cause exists when all the circumstances, considered in light of an officer's training and experience, would lead a reasonable person to believe a crime has been committed. *Blacktail Mountain Ranch Co., L.L.C. v. State of Montana, Department of Natural Resources and Conservation*, 2009 MT 345, ¶ 11, 353 Mont. 149, 220 P.3d 388; *State v. Hafner*, 2010 MT 233, ¶ 16, 358 Mont. 137, 243 P.3d 435.

In assessing whether probable cause exists, the Court must consider " 'the totality of the circumstances known to the arresting

officer (or within the knowledge of the other officers at the scene) . . . ' " *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (*quoting Dubner v. City and County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). "Because probable cause must be evaluated from the perspective of prudent [people] not legal technicians, an officer need not have probable cause for every element of the offense." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (internal citations omitted) (internal quotation marks omitted).

Mont. Code Ann. § 45-8-101 provides: "(1) A person commits the offense of disorderly conduct if the person knowingly disturbs the peace by: (a) quarreling, challenging to fight, or fighting; . . ." Here, based on the facts alleged by the parties, the Court concludes that there clearly was probable cause to arrest Oram for disorderly conduct.

Defendants Peterson and Guiberson responded to a complaint regarding a fight in progress. Upon arrival at the scene, the officers observed Hughes on his hands and knees on the sidewalk in front of the Moose Bar, with a "substantial quantity of blood on the sidewalk . . . " They observed Oram, with blood on his face and hair, near their patrol

car. *Court Doc. 45-1 at 2.* At least one officer was aware that Oram was a registered violent offender. *Court Doc. 38, ¶ 7.* The officers were informed that Judge Gutcheck had ordered Oram to stay away from Nicole Hughes (*Court Doc. 38, ¶ 8*) and Jocelyn Curtis stated she told Oram to leave because Nicole was in the bar. *Court Doc. 38, ¶ 9.* The officers observed "several people yelling and pointing at Oram in a very aggressive manner," with one individual at the scene accusing Oram of "kicking people while they are down." *Court Doc. 38-2 at ¶ 6.* Several observers indicated the fight was mutual. *Court Doc. 45-1, p. 2.* Officer Peterson's report notes that even Oram's companion that evening, Joey Tenzer, indicated that "combat appeared mutual" and that "both men were acting stupid." *Court Doc. 45-1, p. 2.*

Oram alleges it was false imprisonment to hold him for so long after the officers were made aware he was not at fault and had determined that he did not need to be taken to jail. As set forth above, there was sufficient evidence to establish probable cause to arrest Oram for fighting. " 'Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may

exculpate the accused.'" *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (*quoting Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)). It was not a violation of Oram's constitutional right that the officers did not take him at his word that he was simply defending himself. They were under no obligation to do further investigation into Oram's claim of self-defense.

Oram also contends it was several hours after the assault before he was taken home. The information provided on the police reports supplied by Oram, however, indicates the officers responded to the scene at 9:57 p.m. The dispatch log at the top of Guiberson's incident report indicates they were going to cite Oram with disorderly conduct at 10:33 p.m. Officer Guiberson's report indicates they "were clear of Gary Oram and headed back to the Moose [Bar]" at 10:37. *Court Doc. 45-2* at 2. Thus, it appears that Oram was detained no more than 45 minutes.

Oram contends the Officers did not include in their reports that Oram told them he was confronted in the bar, kicked by Shawn Hughes's cowboy boot, hit over the head and back with bar chairs, and had half-full glasses of alcohol thrown "into the mix." *Court Doc. 45:*

*Oram's SGI, p. 5, ¶ 6.*  However, both officers' reports indicate that Oram told them that Hughes grabbed him and started beating on him. (*Court Doc. 45-1, 45-2*).  The reports indicate that Oram told at least one officer that he had been defending himself.  (*Court Doc. 45-1, p. 2*).

Oram disputes whether the witnesses were telling the truth, but it is largely undisputed what the officers knew about Oram, what they observed at the scene, and what they were told by the witnesses. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The officers' conduct did not fall to this level.  Officers Guiberson and Peterson clearly had probable cause to believe Oram was fighting with Shawn Hughes in violation of Mont. Code Ann. § 45-8-101. Therefore, they could arrest Oram on this charge.

This appears to be a situation where the officers were attempting to stop a violent bar fight and protect the safety of those involved.  They took Oram home and allowed Hughes to go to the hospital.  In so doing, Officers Guiberson and Peterson did not violate Oram's constitutional rights by detaining him, citing him with disorderly conduct, and

transporting him home.  As such, these Defendants prevail on the first prong of the *Saucier* test and there is no need to address the question of whether the rights at issue were clearly established.  As a matter of law, Officers Guiberson and Peterson are entitled to qualified immunity and Oram's claims of false imprisonment under both state and federal law should be dismissed.

### ii.    **Malicious Prosecution**

Because Oram alleges that "Dillon officials" are pursuing claims against him, the Court presumes that the malicious prosecution charge is leveled at all three Defendants.  In order to maintain a § 1983 action for malicious prosecution, Oram must be able to demonstrate that "the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

To prevail on a claim of malicious prosecution under Montana law, a plaintiff must prove:  (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for

instigating, prosecuting, or continuing such proceeding; (3) there was a lack of probable cause for the defendant's acts; (4) the defendant was actuated by malice; (5) the judicial proceeding terminated favorably for plaintiff; and (6) the plaintiff suffered damage. *Blacktail Mountain Ranch,* 2009 MT 345.

It is not entirely clear whether Oram's malicious prosecution claims are based on the disorderly conduct charge, or on subsequent proceedings related to his earlier convictions. In either case, Oram's malicious prosecution claims fail under both federal and state law. As set forth above, undisputed evidence shows that there was sufficient probable cause to support the proceedings. *Freeman,* 68 F.3d at 1189; *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (upholding district court's grant of summary judgment on malicious prosecution claim because probable cause existed to arrest and prosecute plaintiff for arson); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009) (no need to decide whether there was malice because probable cause existed and probable cause is an absolute defense to malicious prosecution claim). Also, the fifth state law element is lacking because

Oram has not contended or presented any evidence to show that there has been a favorable termination of the charges. Oram's malicious prosecution claims fail under both federal and state law.

No violation of Oram's constitutional rights has been shown, therefore, there is no need to address the question of whether the rights at issue were clearly established. As a matter of law, Defendants are entitled to qualified immunity and Oram's malicious prosecution claims should be dismissed.

### iii. <u>Excessive Force</u>

Oram also alleges in Count Two that Officer Guiberson used excessive force when he pushed Oram after dropping him off at his home and removing his handcuffs. *Court Doc. 14, ¶ 60.* A claim that a law enforcement officer used excessive force in the course of an arrest or other seizure and/or while an individual is detained post-arrest but pre-arraignment is analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994), cert. denied, 513 U.S. 1152 (1995); *Pierce v. Multnomah County, Oregon*, 76 F.3d 1032,

1043 (9th Cir. 1996). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *See Graham*, 490 U.S. at 396 (citations omitted).

Whether a law enforcement officer's use of force was "objectively reasonable" depends upon the totality of the facts and circumstances confronting him. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.) (en banc) (*quoting Graham*, 490 U.S. at 397, 109 S.Ct. at 1872), *cert. denied*, 545 U.S. 1128 (2005). This determination is made, "without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citation omitted). Reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."

*Graham*, 490 U.S. at 397.

The proper application of the reasonableness standard requires the Court to "first 'assess the quantum of force used' and then 'measure the governmental interests at stake by evaluating a range of factors,' including: (1) 'the severity of the crime at issue'; (2) the extent to which 'the suspect poses an immediate threat to the safety of the officers or others'; (3) and 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.' " *Moss v. U.S. Secret Service*, 675 F.3d 1213 (9th Cir. 2012) citing *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007)(internal quotations and citations omitted).

Oram contends that Officer Guiberson's report admits that he pushed him. Guiberson's report described the event as follows:

> It was apparent he [Oram] was under the influence of alcohol and was acting bizarre. He would get close to me and then move back in quick motions. I had to put the palms of my hands on his chest and slightly push him away from me as I felt he was getting to (sic) close and his behavior was unpredictable. He was obviously displeased with my decision to cite him.

*Court Doc. 34-1--Exhibit 2 to Brief in Support of Oram's Motion to Compel, p. 2–Gulberson's report.*

The first step in analyzing whether Officer Guiberson's actions

constituted excessive force is to consider the quantum of force used. Officer Guiberson describes the event as a slight push and Oram does basically not contest that description. Oram has not contended that he suffered physical injuries from Guiberson's pushes. This sort of de minimis use of force cannot ground an excessive force claim under the Fourth Amendment. *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (internal quotation marks and citation omitted)); *United States v. Alverez–Tejeda*, 491 F.3d 1013, 1017 (9th Cir. 2007) ("While the police may not use excessive force in conducting a search or seizure, the force here was minimal." (internal citation omitted)). The parties' submissions show that the force utilized in this situation was minimal.

Although Oram, in his Statement of Genuine Issues, mentions the manner in which he was handcuffed, and attaches a picture of the injury allegedly resulting therefrom, he has not presented this allegation as a claim herein. Nor has he alleged that the handcuffs were too tight, or that he complained to the officers about the handcuffs

being too tight.  *See Liiv v. City of Coeur D'Alene*, 130 Fed. Appx. 848 at * 3 (9th Cir. 2005).

The Court must balance the minimal use of force here against the severity of the crime, any threat to officer safety, and whether the suspect was resisting arrest.  Defendants concede that Oram was not resisting arrest or trying to escape.  Defendants do contend that they had just arrested Oram for disorderly conduct, a crime involving violence.  The officers had just removed Oram from a bar fight in which the other participant was taken to the hospital and Oram's jeans had been saturated with blood.  While disorderly conduct is not a particularly serious offense, the violent nature of the bar fight must be considered.

The Court must also consider whether Oram posed an immediate threat to Officer Guiberson's safety.  Oram does not deny that he got too close to Officer Guiberson, that he had been drinking, or that he was acting bizarrely.  Under these facts, Officer Guiberson reasonably perceived a threat to his person and the slight push was not an excessive response to that threat.

Oram contends that since the officers did not do a breathalyzer test on him, they cannot assert that he was drinking.  A law enforcement officer is not required to depend on a breathalyzer to determine whether an individual is under the influence of alcohol. Moreover, Oram he does not deny that he had been drinking.

Under these facts, Officer Guiberson's "slight push" does not amount to excessive force and Oram's Fourth Amendment rights were not violated.  Thus, there is no need to address the question of whether the rights at issue were clearly established, Defendant Guiberson is entitled to qualified immunity on Oram's excessive force claim, and this claim should be dismissed.

### b.    <u>Count Three</u>

Count Three alleges Defendant Dolan exceeded his authority in seeking a warrant for Oram's arrest.  Oram also contends that a full, fair, and impartial hearing was never held before his rights were seized on June 10, 2011.

A prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when they

engage in activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). To determine whether a prosecutor is entitled to absolute immunity, the Supreme Court has adopted a "functional approach," which looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Absolute immunity does not protect a prosecutor's activities if the prosecutor steps outside their role as an advocate. For example, a prosecutor is not entitled to absolute prosecutorial immunity when she personally certifies the truthfulness of statements in an application for an arrest warrant. *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

Here, Oram's allegations against Defendant Dolan stem from Dolan's decision to seek a hearing regarding whether Oram violated the terms of his suspended sentence and the failure to hold a hearing before his June 10 arrest. Mr. Dolan filed a motion for an order to show cause and to revoke Oram's suspended sentence. In that motion, he specifically stated, "according to police reports reviewed." *Court Doc. 38-1, p. 10.* He did not vouch for the truth of the facts set forth in the

motion, he did not file a certification or affidavit or any other documents which would have changed his role from a prosecutor to a witness. Dolan's decision to proceed on the revocation of the suspended sentence and the disorderly conduct citation are clearly covered by prosecutorial immunity.

As such, Defendant Dolan has absolute immunity for his duties as a County Attorney. Count Three should be dismissed.

### 4. <u>State Law Claims</u>

To the extent Oram seeks to pursue Montana state law claims other than those addressed herein, the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3)(district court may decline supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction").

## IV. <u>CONCLUSION</u>

No violation of Oram's constitutional rights has been shown. As a matter of law, Defendants are entitled to qualified immunity on Oram's false arrest, false imprisonment, and malicious prosecution claims and Counts One and Two should be dismissed. Defendant Dolan is entitled

to prosecutorial immunity with regard to all claims raised in Count Three, and therefore it should also be dismissed.  No claim was raised in Count Four.  Lastly, the Court should decline to exercise supplemental jurisdiction over any state law claims.

Based on the foregoing, IT IS ORDERED that Oram's Rule 60 Motion to Vacate the Court's prior Order denying his Motions to Compel (*Court Doc. 42*) is DENIED.

Further, IT IS RECOMMENDED that:

1.  Defendants' Motion for Summary Judgment (*Court Doc. 37*) be granted and this matter be dismissed with prejudice.

2.  The Court should decline to exercise supplemental jurisdiction over Oram's state law claims.

3.  The Clerk of Court should be directed to entered judgment in favor of Defendants.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of

Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If any party files objections, they must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding.  In addition, they must itemize each recommendation to which objection is made and must set forth the authority they rely on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings and Recommendations may preclude the party from relying on that fact or argument at a later stage of the proceeding.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a),

should not be filed until entry of the District Court's final judgment.

DATED this 2nd day of August, 2012.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge